**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LUZ E. MALDONADO, ) | CASE NO.  1:10-cv-1259 |
|  ) |  |
| Plaintiff, ) |  |
|  ) | JUDGE NUGENT |
| v. ) |  |
|  ) | MAGISTRATE JUDGE VECCHIARELLI |
| MICHAEL J. ASTRUE, ) |  |
| Commissioner of Social ) |  |
| Security, ) |  |
|  ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) |  |

This case is before the magistrate judge on referral.  Plaintiff, Luz E. Maldonado ("Maldonado"), challenges the final decision of the Commissioner of Social Security ("Commissioner"), denying Maldonado's applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423 and 1381(a). This court has jurisdiction pursuant to 42 U.S.C. § 405(g).

For the reasons given below, the decision of the Commissioner should be AFFIRMED.

I.  Procedural History

Maldonado applied for SSI on June 26, 2006, alleging disability as of May 31, 2006 due to diabetes, cholesterol, depression, hypertension, possible breast cancer, and ailments involving her spine, vision, nerves, and right kidney.  Her application was denied initially and upon reconsideration.  Maldonado timely requested an administrative hearing.

Administrative Law Judge Edmund Round ("ALJ") held a hearing on April 30, 2009. Maldonado was represented by counsel at the hearing, and she testified on her own behalf. Evelyn Sinclair testified as a vocational expert ("VE"), and Frank Cox testified as a medical expert ("ME"). Sonia Cuz Mato served as interpreter. The ALJ issued a decision on August 5, 2009 in which he determined that Maldonado is not disabled. When the Appeals Counsel declined further review on April 23. 2010, the ALJ's decision became the final decision of the Commissioner.

Maldonado filed an appeal to this court on June 4, 2010. Maldonado alleges that the ALJ's decision is not supported by substantial evidence because the ALJ failed to give sufficient evidentiary weight to the opinions of her treating and examining medical sources. The Commissioner denies error.

## II. Evidence

*A. Personal and Vocational Evidence*

Maldonado was born on September 16, 1967 and was 41 years old at the time of her administrative hearing. She has an eleventh grade education and does not understand written or spoken English.

*B. Medical Evidence*

On July 28, 2006, Roberto LeBron, M.D., a physician with the Neighborhood Family Practice completed a report for the Bureau of Disability Determination ("the Bureau"). Tr. 232-233, 238. Dr. LeBron reported that he had examined Maldonado on July 12, 2006, and he diagnosed her as suffering from diabetes mellitus, osteoarthritis, and anxiety/depression. He added that her diabetes was controlled and that he had ordered

2

a mammogram and chest x-ray. Dr. LeBron started Maldonado on Actos and Paxil and continued Visteryl. He also noted degenerative spinal changes.

Maldonado visited the Neighborhood Family Practice again on July 31, 2006, complaining of insomnia, pelvic discomfort, and a painful swelling on her breast. Tr. at 234. Dr. LeBron noted that she was taking Paxil as prescribed but that Maldonado had discontinued Actos, as she had a reaction to it. Dr. LeBron assessed Maldonado as suffering from fibrocystic disease, an anxiety disorder, hypothyroidism, and hypolipidemia. A mamogram later confirmed calcified lymph nodes and fibrocystic changes in Maldonado's breasts. Tr. at 241.

On September 21, 2006, David V. House, Ph.D., conducted a Mental Status Examination of Maldonado at the request of the Bureau. Tr. at 263-68. Maldonado told Dr. House that her family had moved to Cleveland about three months earlier from Puerto Rico. Dr. House found Maldonado to be confused but active, with pressured speech at times. Maldonado spoke constantly but exhibited loose associations, tangents, and a poverty of content. She complained of insomnia, diabetes, problems with her thyroid, and near blindness. Maldonado also reported depression and suicidal thoughts but no suicide attempts. According to Maldonado, she enjoyed working but had not been able to work since 2001, when she was employed gluing book bags together. Maldonado admitted that she did not take her medication all the time. She said that she had been suffering from panic attacks ever since moving to Cleveland. Maldonado also reported that she did not leave the house alone, had premonitions that something was going to happen, experienced racing thoughts, and had no interest in sex. She said that she talked daily with her dead grandfather and had experienced one episode ten years ago when her dead grandfather

3

appeared to her.

Maldonado was not oriented for place and only partially for time. She did not know her address or the time. Her attention and concentration appeared markedly limited, persistence was inconsistent, and she appeared to have trouble completing the examiner's tasks. She recalled two out of three objects after five minutes had passed and had a deficient memory for digits, deficient computational skill, and fair knowledge of current events. Insight and judgment were markedly limited. Maldonado reported participating to some degree in routine household responsibilities, including cleaning and some laundry. She did not cook or do grocery shopping. Both Maldonado and her husband, who was present during the interview, reported that Maldonado spent her time following her husband around in the house. She did not have a driver's license nor did she ride the bus alone. Dr. House opined, "Her overall level of functioning as at a reduced level of efficiency." Tr. at 266.

Dr. House diagnosed Maldonado as suffering from a major depressive disorder with psychotic features, although he strongly recommended getting confirmation for this diagnosis. Dr. House found concentration and attention to be markedly limited, ability to understand and follow directions to be moderately limited, ability to withstand stress and pressure to be moderately limited, ability to relate to others and deal with the general public to be markedly limited, level of adaptability to be mildly limited, and insight and level of judgment to be markedly limited. He also noted that she was not especially treatment compliant. Dr. House assigned Maldonado a Global Assessment of Functioning ("GAF")

4

of 40.[1]

On October 8, 2006, Eulogio R. Sioson, M.D., performed a physical examination of Maldonado at the request of the Bureau. Tr. at 272-77. At the conclusion of his examination, Dr. Sioson opined that Maldonado suffered from hypertension/asthma but with normal blood pressure and no congestive heart failure, diabetes mellitus with significantly impaired vision, arthritis but no gross radiculopathy or inflammatory changes in joints, and depression but with ability to maintain concentration and attention. He summarized, "Except for pain limitation and above findings, neuromusculoskeletal data showed no other objective findings that would affect work-related activities such as walking, climbing, standing, carrying, lifting, handling, sitting and traveling. Hearing and speaking should not be affected." Tr. at 273.

On November 7, 2006, Julia C. Yacobucci, a licensed social worker for The Center for Families and Children, completed a Daily Activities Questionnaire at the request of the Bureau. Tr. at 282-283. Yacobucci reported that Maldonado did not interact with others due to anxiety and had poor stress tolerance. Yacobucci also reported that Maldonado was suspicious of people in general and tended to isolate herself. Maldonado denied going out alone and denied ever having worked. According to Yacobucci, Maldonado prepared meals but took 15-20 minute rests while doing so because she was tired and listless. Maldonado also reported cleaning the house in stages, one section at a time. Maldonado reported bathing slowly and having poor concentration and memory. Yacobucci also

---

[1] A GAF of 30-40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.

reported that Maldonado kept appointments and was compliant with medications.

On November 15, 2006, Aracelis Rivera, Psy.D., completed a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment on the basis of Maldonado's record. Tr. at 284-302. Dr. Rivera opined that Maldonado suffered from severe major depression with psychosis and from anxiety. According to Dr. Rivera, Maldonado was mildly limited in activities of daily living, moderately limited in maintaining social functioning, and moderately limited in her ability to maintain concentration, persistence, and pace. These limitations included moderate limitations in her abilities to understand and remember detailed instructions; carry our detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact with the general public; accept instructions and respond appropriately to criticism from superiors; and respond appropriately to changes in the work setting. Dr. Rivera found that Maldonado's psychological allegations were credible, although reports of their severity were not. She also noted discrepancies in Maldonado's statements and appearance to examiners. Dr. Rivera concluded that Maldonado could perform simple routine tasks in a work setting with low production demands but that communicating in English would be a problem.

On April 2, 2007, Alice Chambly, Psy.D., a state agency psychologist, reviewed Maldonado's updated record, and affirmed Dr. Rivera's assessment. Tr. at 327.

On December 12, 2006, Eduardo Vazquez, M.D., completed a report to the Bureau

regarding Maldonado's mental health. Tr. at 312-13. Dr. Vazquez reported that he began treating Maldonado on August 21, 2006 and had treated her three times. According to Dr. Vazquez, Maldonado reported fears of going out, suspicion of people, severe anxiety, withdrawn behavior, and restlessness. Maldonado also reported little appetite, weight loss, difficulty taking care of immediate needs, and difficulty sleeping. She said that she had been treated for depression and anxiety off and on since childhood. Maldonado was then taking Prozac, Vistaril, and BuSpar. Maldonado reported that although her medications helped with sleeplessness and anxiety she still had significant problems with them. Maldonado said that she was having crying spells, irritability, and episodes of compulsive candy-eating despite her diabetes. She said that she had also missed some medical appointments because of poor memory.

Dr. Vazquz found Maldonado appropriately dressed and groomed; well-oriented as to time, place, and person; and having a memory within normal limits. Her thinking was concrete. Maldonado's affect, however, was restricted and her mood sad and anxious. Dr. Vazquez diagnosed Maldonado as suffering from severe, recurrent major depression; generalized anxiety disorder; hypothyroidism; diabetes; and hypertension. He concluded, "This woman seems to be quite overwhelmed with anxiety, has increased difficulty functioning taking care of her immediate needs, and I would not think she would be able to have a regular job and I do not think she has ever had a job of any significance." Tr. at 313.

*C. Hearing testimony*

Maldonado testified at her hearing on April 30, 2009. Tr. at 28-56. She testified that she had left school in the eleventh grade due to poor grades, could not speak English but

was literate in Spanish, and had not worked for the past 15 years due to diabetes, depression, anxiety, and panic attacks. She stated that her single biggest reason for not working is the fear that something is going to happen to her. Maldonado was then taking Paxil for her depression, but she still had symptoms of the condition. She testified that she still became nervous, could not be around a lot of people, and did not leave the house by herself because she was afraid. Over a year earlier, Dr. Vazquez referred her to another psychiatrist, but she did not go. She had not seen a psychiatrist in over a year.

Maldonado testified that she had to write things down or she would forget them. She "did her things" during the day, but she spent most of the time sitting down. She added that she could not sit for long periods of time. According to Maldonado, she cooked with her husband's help, although she could also cook without his being there. She spent time working on coloring books and talking on the telephone with her aunt. Her physical problems included diabetes, poor eyesight, constipation, high cholesterol, a thyroid condition, high blood pressure, and "problems" with her bones. She took medications for her conditions, including Paxil, Metformin, Vite tablets, enteric aspirin, Lovastatin, Enalpril, ibuprofen, cyclobenzaprine, fluosetine, and Necon. According to Maldonado, the medications upset her stomach.

The ME testified from his review of the record, Maldonado had mild diabetes with a modest elevation in blood sugar. There was no evidence that the diabetes had caused neuropathy or retinopathy. There were no decipherable results of an official eye exam in the record. Dr. Sioson had recorded Maldonado's vision as 20/200 in the right eye and 20/100 general visual acuity, but it was not known if this result was with her glasses on or off. Maldonado's hypertension was asymptomatic. According to the ME, there were no

8

other significant medical conditions.

The ALJ asked the VE to suppose a worker 41 years old with an 11th grade education but who does not speak or read English; with no relevant vocational training or no exertional limitations; who was limited to simple, routine, low stress tasks away from the public; limited to simple, superficial interaction with supervisors and co-workers; limited to work without high productivity demands; and precluded from tasks requiring arbitration, confrontation, negotiation, directing the work of others, or responsibility for the safety of others; and with no relevant work experience. The ALJ then asked if there were jobs in the national economy for such a worker. The VE replied that there were, including day worker, housekeeper at a hotel or motel, and cleaner.

Maldonado's counsel asked the VE to assume that the individual described by the ALJ also suffered from depression that would caused her to be absent 20% of the time. When asked if there were jobs in the national economy for such an individual, the VE said that there were not.

### III. Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## IV. Summary of Commissioner's Decision

In relevant part, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since May 31, 2006, the date of her application for Supplemental Security Income.

2. The claimant has the following severe impairments: a major depressive disorder and a generalized anxiety disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. The claimant retains the following residual functional capacity. She has no exertional limitations. She is limited to simple routine tasks that do not take place in public and do not involve interaction with the public. She is further

        limited to superficial interaction with supervisors and co-workers and is precluded from tasks with high production demands, meaning that she is precluded from working on fast moving assembly lines and from performing piecework rapidly. She is precluded from tasks that require arbitration, confrontation, negotiation, directing the work of others, or being responsible for the safety of others.

5. The claimant has no past relevant work.

6. The claimant was born on September 16, 1967 and was 38 years old when she made her SSI application and is 41 years old as this decision is issued, a "younger individual" at all relevant times.

7. The claimant is not literate in English and is not able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in th significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, on or after May 31, 2006, the date her application was filed.of this decision.

Tr. at 16-23.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which

a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI. Analysis

Maldonado contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to give sufficient evidentiary weight to the opinions of her treating and examining medical sources. The Commissioner denies that the ALJ erred in weighing the relevant medical sources.

The medical opinion of treating physicians should be given greater weight than those of physicians hired by the Commissioner. *Lashley v. Secretary of Health and Human Servs.,* 708 F.2d 1048 (6th Cir. 1983). Medical opinions are statements about the nature and severity of a patient's impairments, including symptoms, diagnosis, prognosis, what a patient can still do despite impairments, and a patient's physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). This is true, however, only when the treating physician's opinion is based on sufficient objective medical data and is not contradicted by other evidence in the record. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 & n.7 (6th Cir. 1991); *Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711-12 (6th Cir. 1988). Where there is insufficient objective data supporting the opinion and there is no explanation of a nexus between the conclusion of disability and physical findings, the factfinder may choose to disregard the treating physician's opinion. *Landsaw v. Secretary of Health and Human Servs.,* 803 F.2d 211, 212 (6th Cir. 1986). The factfinder must, however, articulate a

12

reason for not according the opinions of a treating physician controlling weight. *Shelman v. Heckler*, 821 F.2d 316 (6th Cir. 1987).

In considering the opinions of Dr. House and Dr. Vazquez, the ALJ quoted the following from Dr. Vazquez: "This woman seems to be quite overwhelmed with anxiety, has increased difficulty functioning taking care of her immediate needs, and I would not think she would be able to have a regular job and I do not think she has ever had a job of any significance." Tr. at 313. The ALJ noted that these are opinions on issues ultimately reserved to the Commissioner and are not entitled to special significance. He continued that, nevertheless, he considered them in the context of the overall record.

In evaluating Dr. House's opinion, the ALJ noted that it was based on a one-time examination and appeared to be a recitation of Maldonado's own description of her symptoms and functional limitations. He also noted elsewhere that Maldonado presented differently to different evaluators and admitted to Dr. House that she was not always compliant with her medications. He further observed that the state agency consultants concluded that the record suggested that Maldonado was capable of functioning at a higher level than Dr. House believed.

In evaluating Dr. Vazquez's opinion, the ALJ wrote, "Dr. Vazquez's opinion also appears to be a recitation of the claimant's own description of her functional limitations. It is not longitudinally supported by evidence that he himself has provided or contained elsewhere in the record." Tr. at 22. For these reasons, the ALJ did not give the opinions of Dr. House or Dr. Vazquez probative weight.

Elsewhere in his opinion, the ALJ considered the medical and non-medical evidence in the record. He noted that there was no evidence in the record that Maldonado's physical

13

conditions imposed any limits on her residual functional capacity. Tr. at 17-18. In evaluating her mental impairments, he considered Maldonado's various and contradictory reports of her activities of daily living, observations of her by treating and examining sources, contradictions in her own statements, contradictions between her statements and those of her husband, and contradictions in her claimed limitations and her interactions with various evaluators, as well as the opinions of treating, examining, and non-examining medical sources. Tr. at 19-20. The ALJ also assessed Maldonado's allegations of disabling symptoms as not fully credible on the basis of contradictions described above, the conservative nature of her treatment, poor compliance with treatment regimens, her apparent disinclination to get treatment, and no record of crisis or emergency care. Tr. at 20-21. From such considerations, the ALJ opined that Maldonado had moderate restrictions of daily living; moderate difficulties in social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. On the basis of this assessment, the ALJ determined that Maldonado did not meet the paragraph (B) or (C) criteria at listing 12.04 or 12.06.

The record supports the ALJ's observation that both Dr. House's and Dr. Vazquez's assessments of Maldonado were based largely on her own subjective statements regarding her symptoms, not on objective medical data, and that those opinions were contradicted by other evidence in the record. As there was insufficient objective data supporting the opinions of Drs. House and Vazquez, the ALJ was not required to give those opinions probative weight. Moreover, as the ALJ considered the entire record in reaching his assessment of Maldonado's residual functional capacity and gave sufficient reasons for his conclusions, his overall opinion was supported by substantial evidence in the record.

VII. Decision

For the foregoing reasons, the decision of the Commissioner should be AFFIRMED.

Date: July 28, 2011            s/ Nancy A. Vecchiarelli
                                                 U.S. Magistrate Judge

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**